INTERNATIONAL SURPLUS LINES IN-
SURANCE COMPANY, an Illinois cor-
poration, Plaintiff–Counter–Defendant–
Appellee,

v.

WYOMING COAL REFINING SYSTEMS,
INC., a Wyoming corporation, fdba
Char–Fuels of Wyoming, Inc.; Char–Fu-
els Associates, Ltd., a Wyoming limited
partnership, Defendants,

and

University of Wyoming Research Corpora-
tion, aka University of Wyoming Re-
search Institute, Defendant–Counter–
Claimant–Appellant.

INTERNATIONAL SURPLUS LINES IN-
SURANCE COMPANY, an Illinois cor-
poration, Plaintiff–Counter–Defendant–
Appellee,

v.

WYOMING COAL REFINING SYSTEMS,
INC., a Wyoming corporation, fdba
Char–Fuels of Wyoming, Inc.; Char–Fu-
els Associates, Ltd., a Wyoming limited
partnership, Defendants–Appellants,

and

University of Wyoming Research Corpora-
tion, aka University of Wyoming Re-
search Institute, Defendant–Counter–
Claimant.

Nos. 94–8052, 94–8053.

United States Court of Appeals,
Tenth Circuit.

April 27, 1995.

Peter G. Thompson (John R. Gerstein, Kevin M. LaCroix, and William E. O'Brian of Ross, Dixon & Masback, Washington, DC, John B. Speight and Michael Rosenthal of Hathaway, Speight, Kunz & Trautwein, Cheyenne, WY, with him on the brief) of Ross, Dixon & Masback, Washington, DC, for plaintiff-appellee.

Raymond B. Hunkins of Jones, Jones, Vines & Hunkins, Wheatland, WY, for Wyoming Coal Refining Systems, Inc. and Char–Fuels Associates, Ltd. (John E. Stanfield and Bruce B. Waters of Smith, Stanfield & Scott, Laramie, WY, with him on the brief, for University of Wyoming Research Corp.)

Before BRORBY, Circuit Judge, McKAY, Senior Circuit Judge, and OWEN,* Senior District Judge.

BRORBY, Circuit Judge.

An insurer sought a declaration from the federal district court that it had no duty to defend or insure an underlying state cause of action. The insured party cross-claimed for a determination of bad faith on the part of the insurer. The district court granted summary judgment in favor of the insurer on each of the issues.

## BACKGROUND

Following is a brief summary of the relevant, undisputed facts. The University of Wyoming Research Corporation, doing business as Western Research Institute ("Research Institute"), entered into an agreement with Wyoming Coal Refining Systems [1] ("Coal Refining Systems"). According to the agreement, the Research Institute was to perform research that would define optimal conditions for a coal refining process in order to allow Coal Refining Systems to design a large coal refining facility in Wyoming. The agreement became effective on June 15, 1988.

During the second phase of the Research Institute's research, problems developed resulting in delays to the entire project. Due to the problems and delays, Coal Refining Systems refused to pay some of the Research Institute's invoices in 1990. Over the next year, Coal Refining Systems and the Research Institute argued about their obligations under their agreement. In telephone conversations during March and April 1991, Coal Refining Systems threatened the Research Institute with litigation. Although Coal Refining Systems continued to refuse payment, the project was finished in August 1991, behind schedule. Throughout the month of August and into the fall, both par-

---

* The Honorable Richard Owen, Senior District Judge for the Southern District of New York, sitting by designation.

1. Formerly doing business as Char–Fuels of Wyoming, Inc.

ties argued about the research and their contractual obligations. Coal Refining Systems expressed deep dissatisfaction with the Research Institute's performance.

In August, the Research Institute purchased liability coverage, and that policy is the subject of this suit. Coal Refining Systems filed a suit against the Research Institute for equitable relief in December 1991. Coal Refining Systems later amended its complaint to include claims for monetary damages: it added claims of intentional misrepresentations. After various wrangles by the parties, Coal Refining Systems' lawsuit resulted in a default judgment against the Research Institute in state court.

The insurance policy purchased by the Research Institute was with International Surplus Lines Insurance Company ("Insurance Company"). The policy expressly excluded claims based upon the insured's dishonesty, claims for relief other than money damages, and claims arising out of known potential claims. As part of its insurance application, the Research Institute was required to disclose any "fact, circumstance or situation which said person has reason to suppose might afford valid grounds for any future claim against said person and/or the Organization." Proposal for Insurance, Question 17. The Research Institute responded by saying "none." Below this question on the application form was the statement: "It is agreed that if such facts, circumstances or situations exist any claim or action arising therefrom is excluded from the proposed coverage." When litigation commenced between the Research Institute and Coal Refining Systems, the Insurance Company denied all coverage.[2]

With diversity jurisdiction, the Insurance Company sought a declaratory judgment in district court that it had no obligation to cover Coal Refining Systems' claim against the Research Institute. The Research Institute cross-claimed that the Insurance Company was acting in bad faith. The district court granted summary judgment for the Insurance Company. *International Surplus Lines Ins. Co. v. University of Wyoming Research Corp.*, 850 F.Supp. 1509 (D.Wyo. 1994).

## DISCUSSION

■ We review a district court's grant of summary judgment de novo. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

■ Although the district court discusses several reasons for granting summary judgment in favor of the Insurance Company on the issue of coverage, we find one reason sufficient. Because the Research Institute misrepresented material information on the insurance application, the underlying state cause of action is not a covered claim.

Question 17 says: "No person proposed for insurance is cognizant of any fact, circumstance or situation which said person has reason to suppose might afford valid grounds for any future claim against said person and/or the Organization except as follows (If answer is None, so state)." The Research Institute argues this calls for a totally subjective speculation. It asserts that the president of the Research Institute, in filing the insurance application, thought no valid grounds existed for any claim against the Research Institute. Thus, it concludes, Question 17 does not bar coverage.

■ Under Wyoming state law, an insurance policy is interpreted as a contract. *State Farm & Casualty Co. v. Paulson*, 756 P.2d 764, 765 (Wyo.1988). A contract is given its common sense and plain meaning, unless the provision taken in context of the entire contract is ambiguous. *Id.* at 766. The language of a contract is construed in accordance with what a reasonable person would understand the terms to mean. The contract is to be interpreted by an objective standard and, ordinarily, not by the parties'

**2.** The Insurance Company later did make an offer, which was refused by the Research Institute, to defend in the state court action. The same day the Research Institute rejected the offer, it entered into a settlement agreement with Coal Refining Systems. In this agreement, Coal Refining Systems promised to look solely to the assets of the insurance company to cover any judgments against the Research Institute. The state court entered a default judgment pursuant to the settlement agreement against the Research Institute for $749,253,585.

subjective rendition of the contract. *Shrum v. Zeltwanger,* 559 P.2d 1384, 1387 (Wyo. 1977).

Question 17 of the application is unambiguous and calls for a simple disclosure of facts indicating the probability of a covered claim. It calls for an objective assessment. *See Evanston Ins. Co. v. Security Assurance Co.,* 715 F.Supp. 1405, 1414 (N.D.Ill.1989). Thus, regardless of the president's subjective evaluation, the application of Question 17 must be determined with reference to an objective standard.

The Research Institute knew of Coal Refining Systems' unhappiness with its work. Coal Refining Systems had explicitly threatened litigation. Therefore, the Research Institute had a duty to disclose these facts on its insurance application. Any reasonable person would have been aware of the possibility of the claim. These were facts arising out of known potential claims at the time of the application and therefore are not covered by the insurance contract. The Research Institute alleges its conflicts with Coal Refining Systems were resolved at the time it applied for insurance. However, the Research Institute has shown no evidence to support this allegation. The district court did not err in granting summary judgment in favor of the Insurance Company on this issue.

The Research Institute's second issue on appeal is whether the district court erred in granting summary judgment in favor of the Insurance Company on the Research Institute's claim of bad faith in refusing coverage to the Research Institute. "The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim." *Hatch v. State Farm Fire & Casualty Co.,* 842 P.2d 1089, 1093 (Wyo.1992). Coal Refining Systems' state action against the Research Institute initially sought only equitable relief. The Research Institute's insurance policy excluded coverage for claims other than money damages. Therefore, the Insurance Company denied coverage for the state litigation on the grounds that the complaint sought only declaratory and injunctive relief.

■ The Research Institute has not presented evidence on the Insurance Company's bad faith, and therefore cannot survive summary judgment; mere allegations are insufficient. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The Insurance Company's explanation for denial of coverage is clear and is correct in its evaluation of the underlying state case, at the time it denied coverage, as a cause of action for injunctive relief only. The Insurance Company did not act with bad faith. There is no genuine issue for trial; therefore, summary judgment was appropriate. *See Willis v. Midland Risk Ins. Co.,* 42 F.3d 607, 611 (10th Cir.1994).

■ Finally, the Research Institute asserts the district court erred in granting summary judgment after it filed a Fed. R.Civ.P. 56(f) motion. The Research Institute argues the district court failed to consider facts essential to the Research Institute's opposition to summary judgment. The Research Institute had sought discovery of two groups of documents: (1) three claim-file documents generated before November 20, 1993, and (2) all claim-file documents generated after November 20, 1993. The Magistrate Judge had ruled that these claim-file documents were immune from discovery under the work-product doctrine and under the attorney-client privilege. The Research Institute only appealed the Magistrate's Order with respect to the three pre-November 20 claim-file documents. By failing to file an objection to the Magistrate's Order on the post-November 20 claim-file documents, the Research Institute has waived its right to appeal that portion of the rulings. Fed. R.Civ.P. 72(a).

■ We review a district court's refusal to grant a Rule 56(f) motion for abuse of discretion. *Building & Constr. Dept. v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1496 (10th Cir.1993). Because the Research Institute waived its right to appeal the post-November 20 claim-files, it cannot later use a Rule 56(f) motion to retain that material. Thus, the district court did not abuse its discretion in refusing to grant Rule 56(f) relief on those claim-files.

Although the Supreme Court has held that, under Fed.R.Civ.P. 56(f), summary judgment [should] be refused where the non-moving party has not had the opportunity to discover information that is essential to his opposition, this protection arises only if the nonmoving party files an affidavit explaining why he or she cannot present facts to oppose the motion.

*Dreiling v. Peugeot Motors of America, Inc.,* 850 F.2d 1373, 1376 (10th Cir.1988) (internal quotations and citations omitted). The party must state with specificity why extra time is needed and how the additional time and material will rebut the summary judgment motion. *Jensen v. Redevelopment Agency,* 998 F.2d 1550, 1554 (10th Cir.1993). "[M]ere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable" is insufficient to invoke Rule 56(f). *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 833 (10th Cir.1986). The Research Institute only submitted one affidavit, from one of its attorneys in support of its 56(f) motion. This affidavit asserts the material is of "critical importance" and the Research Institute "will be seriously prejudiced if [it is] not able to obtain and review the entire claims file of [the Insurance Company]." However, the affidavit contains only conclusory assertions and does not show how the additional discovery could have defeated summary judgment. It was appropriate for the district court to continue with summary judgment. The district court did not abuse its discretion.

## CONCLUSION

There are no genuine issues of material fact in this appeal. Accordingly, we **AFFIRM** the district court's grant of summary judgment in favor of International Surplus Lines Insurance Company on each of the claims.